UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

SHERRY JORDAN,

    Plaintiff,

    v.     Case No. 2:16-cv-488-JVB-PRC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

    Defendant.

**OPINION AND ORDER**

Plaintiff Sherry Jordan seeks judicial review of the Social Security Commissioner's decision denying her disability benefits, and asks this Court to remand the case. For the reasons below, this Court remands the ALJ's decision.

**A.    Overview of the Case**

Plaintiff alleges that she became disabled on March 1, 2012. (R. at 117.) Plaintiff previously worked in childcare. (R. at 50.) She made an unsuccessful work attempt since her alleged disability, but has not worked since 2013. (R. at 22.) The Administrative Law Judge ("ALJ") found that Plaintiff suffered from multiple severe conditions and that she had no past relevant work. (R. at 22, 27.) However, the ALJ concluded that she could perform light work with some limitations. (R. at 24.) Therefore, the ALJ denied her benefits. (R. at 28.) This decision became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.)

B.  **Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

C.  **Disability Standard**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

D.  **Analysis**

Plaintiff argues that the ALJ erred in finding that she was not disabled. Specifically, Plaintiff argues that the ALJ erred in omitting certain functional limitations and discounting her treating physician's opinions.

**(1)   The ALJ Properly Analyzed Plaintiff's Left-Hand Weakness**

Plaintiff first argues that the ALJ failed to consider how her left hand is practically unusable in a competitive work environment. (Pl.'s Br. at 15.) According to the vocational expert who testified at the hearing, this would render Plaintiff unemployable. (R. at 54.) The ALJ was not convinced that the record supported such a limitation. The record contains multiple findings of normal upper extremities. (R. at 235, 322, 420.) However, it also contains some references to hand limitations. She appears to have suffered from arthritis at one point. (R. at 337.) She also complained of pain to her left hand during one hospital stay. (R. at 447.) But Plaintiff's main support for left-hand limitations comes from Dr. Smejkal's report, which the ALJ found failed to establish those limitations. (R. at 22–23.) The ALJ's finding was proper.

(a)     *The ALJ Adequately Addressed Dr. Smejkal's Report*

Dr. Smejkal gave Plaintiff a physical examination, in which she found that Plaintiff's hands were normal. (R. at 332.) However, Plaintiff showed weak grip strength on a dynamometer test, which measures how much force one can generate with her hand. *Id.* Only this finding suggested any hand limitations. Plaintiff argues that the ALJ did not fully appreciate the dynamometer test results. The ALJ, after all, is not a doctor, but Plaintiff is not a doctor either. Dr. Smejkal, however, is a doctor. She concluded that, despite the dynamometer test results, Plaintiff had "[n]ormal grip strength." (R. at 333.) The ALJ chose to rely on Dr. Smejkal's overall findings rather than interpret a one-off test result for herself. This Court will not fault the ALJ for declining to play doctor.

(b)     *The ALJ Did Not Need to Assign a Weight to Dr. Smejkal's Report*

Plaintiff next contends that the ALJ erred in failing to weigh Dr. Smejkal's report as a medical opinion. A medical opinion involves "judgments about the nature and severity of [a claimant's] impairments . . . and what [she] can still do despite impairments." 20 C.F.R. § 416.927(a)(1). As Plaintiff points out, Dr. Smejkal noted that Plaintiff was blind in one eye and had part of her thyroid removed, but these examples are of Dr. Smejkal merely stating impairments, not opining on the nature or severity of them. While an ALJ must weigh a doctor's judgment of what a given test result says about the patient's limitations, she need not weigh a doctor's mere recitation of the test result.

Furthermore, Plaintiff would have gained nothing had the ALJ weighed Dr. Smejkal's report. It contains the dynamometer test results, but, as noted above, the ALJ was entitled to rely on Dr. Smejkal's overall finding that Plaintiff's upper extremities were normal. (R. at 332.) Moreover, while Dr. Smejkal found that Plaintiff was blind in her left eye—a finding that the ALJ accepted—the doctor did not provide any functional limitations related to her blindness. (R. at 330.) Any error here would be harmless because assigning Dr. Smejkal's report even substantial weight "would not have aided [Plaintiff's] case." *Henke v. Astrue*, 498 Fed. Appx. 636, 641 (7th Cir. 2012).

**(2)     The ALJ Properly Analyzed Plaintiff's Left-Eye Blindness**

Plaintiff is blind in one eye. (R. at 22.) As a result, the ALJ required Plaintiff to "avoid concentrated exposure to workplace hazards." (R. at 27.) Plaintiff contends that the ALJ should have included further limitations. She cites S.S.R. 83-14 which lists a host of limitations that a visual impairment might cause. (Pl.'s Br. at 17.) Then she faults the ALJ for not questioning the vocational expert on these limitations. *Id.* However, Plaintiff does not cite any evidence that she

has these limitations, only that she suffers from a potential cause of them. An ALJ does not need to assume that a plaintiff suffers from a given limitation merely because she has an affliction that might cause it. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005). The ALJ did not err here.

**(3)     The ALJ Erred in Analyzing Dr. Spotwood's Opinions**

Dr. Spotwood, Plaintiff's treating physician, submitted two opinions, which the ALJ independently analyzed and assigned "no weight" and "little weight," respectively. (R. at 26.) If an ALJ discounts a treating physician's opinion, She need only "minimally articulate" her thought process. *Elder v. Astrue,* 529 F.3d 408, 415 (7th Cir. 2008). The ALJ's reasoning need not be perfect, so long as it is not "patently erroneous." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). Because the ALJ's analysis of Dr. Spotwood's second opinion contains patently erroneous logic and mischaracterizes the record, remand is required.

(a)     *The ALJ Did Not Err in Giving Dr. Spotwood's First Opinion "No Weight"*

Dr. Spotwood's first opinion states that Plaintiff cannot work at all. (R. at 470). Such a finding is reserved for the Commissioner.  20 C.F.R. § 404.1527(d)(1). It is therefore not a medical opinion. 20 C.F.R. § 404.1527(d). Nevertheless, the ALJ still weighed it, assigning it "no weight" because the opinion contains neither functional limitations nor citations to the record. (R. at 26). True, the ALJ generally should give controlling weight to a treating source's opinion. S.S.R. 96-2p. Here, however, there is nothing to weigh. All Dr. Spotwood said was that Plaintiff could not work. (R. at 470.) The ALJ did not err in dismissing this opinion.

(b)     *The ALJ Did Not Err in Refusing to Give Dr. Spotwood Controlling Weight*

Dr. Spotwood provided a second opinion that serves as the doctor's residual functional capacity ("RFC") analysis. (R. at 473–77.) This opinion contains several functional limitations that the ALJ did not include in her RFC analysis. (R. at 24.) Yet, the ALJ assigned this opinion "little weight," attacking its lack of explanation for its findings and its inconsistency with the rest of the record, while also doubting that Dr. Spotwood was even aware of how long he had been treating Plaintiff. (R. at 26.)

A treating physician's opinion is entitled to controlling weight if it "is 'well-supported' by 'medically acceptable' clinical and laboratory diagnostic techniques." S.S.R. 96-2p. The ALJ noted that Dr. Spotwood's second opinion is devoid of references to "treatment notes or testing results" that would support the functional limitations he found. (R. at 26.) The ALJ also explored the record on her own and pointed out the absence of medical-test results that would render Dr. Spotwood's opinion "well-supported." *Id.* Thus, the ALJ properly declined to give the opinion controlling weight.

(c) *The ALJ Improperly Dismissed Dr. Spotwood's Fatigue-Based Limitations*

Dr. Spotwood opined that Plaintiff would need a 30-minute break every two hours and would need two hours of bedrest during the workday. The ALJ dismissed these limitations first by noting that nobody ever referred Plaintiff to a nursing home or home healthcare, as if having to take a daily two-hour nap is a devastating handicap that requires 24-hour care to overcome. This logic is patently erroneous.

The ALJ then noted a lack of a fatigue-related evaluation or diagnosis. *Id.* But the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," among them fatigue. (R. at 25.) Second, the record listed "Fatigue

and Malaise NEC" as a current problem almost a year after first complaining to Dr. Spotwood of fatigue. (R. at 342.) Third, she suffered fatigue during an unsuccessful work attempt, suggesting that, were she to try working again, she would again become fatigued. (R. at 312.) Unconvinced of this fatigue's significance, the ALJ dismissed it, noting that Plaintiff worked "the third shift" at the time. However, the treatment notes also stated that Plaintiff "feels tired often even before the MI earlier this year." (R. at 361.) The ALJ even found that the work stopped "due to her impairments." (R. at 22.) In other words, Plaintiff tried and failed to work due to her limitations.

Granted, Plaintiff appeared unaffected by fatigue at the hearing. (R. at 27.) Maybe this means she does not suffer from fatigue. Or she might only suffer fatigue while attempting to work. The record contains evidence to support the latter contention that the ALJ failed to properly attack. The ALJ must do more to dismiss this evidence than blame it on the third shift without explanation.

**E.     Conclusion**

The ALJ failed to properly discredit Plaintiff's fatigue allegations and improperly discounted Dr. Spotwood's fatigue-based limitations. Accordingly, this Court remands the ALJ's decision.

SO ORDERED on June 28, 2018.

      S/ Joseph S. Van Bokkelen
     JOSEPH S. VAN BOKKELEN
     UNITED STATES DISTRICT JUDGE